Good morning, Illinois Appellate Court, 1st District Court is now in session, the 4th Division. The Honorable Justice Robert E. Gordon presiding, case number 2-0-0669, Midwest Mailing and Shipping Systems, Inc. v. Schoenberg, Finkel, Newman, and Rosenberg, LLC. Well, good morning to all, and will the lawyers who are going to argue the case please introduce yourself to the court. Starting off with the appellant. Dan Meyer for the appellant, thank you, Your Honor. Eric Kaplan for the appellees, Massey and Gale, and Eli K. Oliphant, Your Honor. And Eli K. Oliphant for the appellee, Ryan Rappa. Well, as to the appellees, have you worked out an agreement as to time? Yes, Your Honor. I think that Mr. Oliphant will only need two minutes. Okay. So, we'll give you 15 minutes and 13 for one and two for the other, is that what you're talking about? Correct. Great. Okay, let's start off with the appellant, let's proceed. Thank you. My client's asked that this court reverse the circuit court's orders that entered in October and December of 2019. The October 4 order relates to the Second Amendment third party complaint as against Massey and Gale, and K. Oliphant, the December 6 order relates to Mr. Rappa, Ryan Rappa. I'm going to address the October 4 order first as it pleases the court. Midwest mailing in this complaint claims that my client's malpractice caused it to relinquish certain contracts over, and it's referring specifically to the territorial exclusivity right. My client's third party action against the third party defendants claims that their malpractice caused Midwest mailing to relinquish that very same right. We thus seek in contribution the same injury that is sought against my client in the primary action. Moreover, my client and the third party defendants are each liable in tort to Midwest mailing. Let me ask you this question, you know, the key to this case is the question of whether it's the same injury, would you agree to that? I would. And the injury that's in the initial case achieved is the failure to obtain the approval, you know, in the change of the corporate structure. So how can the other defendants be involved in that process? The other defendants were not involved in that process, and I don't necessarily agree  with that. I think the injury they claim at paragraph 40 in the initial complaint is the loss of the contractual rights. They had to compromise those contractual rights. Now whether permission was sought for the domiciliation change is certainly a component of the case, but it's not the injury. The injury is the loss of exclusivity, which was negotiated away finally in April, and then later in February 2017 with a more formal agreement. Well did the injury crystallize when the termination letter was sent? I don't think that it did, Your Honor. I think that at that point in time there was a risk of an injury. If we read Northern Illinois Emergency Physicians, that defines when an injury occurs in a legal The monetary harm actually occurs. They occur at the same time, the injury and the monetary damages. Let me give you an example of why the act, and this is the position that the third party defendants take, the appellees take, as well as the circuit court took. They equate the injury or conflate the injury with the act, and I use this example or a on the jurisdictional motion related to Mr. Rappaport. I can commit an act of malpractice today. I can breach my standard of care at some point this afternoon after we're done with this hearing in some other case. My client has not necessarily suffered an injury just because I've done that. Injury, pardon me, the breach of the standard of care and the resulting injury are two separate events. They don't necessarily occur at the same time. In an illegal malpractice setting, they will rarely occur at the same time. What happens between my breach of the standard of care this afternoon and the occurrence of the injury can be any number of things. What I've done as a breach of the standard of care today, it might be fixable. I might be able to cure it, or maybe the other side doesn't recognize what I did, doesn't recognize it for what it is, but going back to that first point that the injury can be fixed, that's the entire point of this case. If we assume, as we must, that my clients breached the standard of care, the question is whether or not that breach could have been fixed. The contention of the third-party complaint is that it could have been fixed. There was no harm to Midwest Mailing at that time, meaning at the time that the work was undertaken. There was not even any harm in late September 2015 when Neopost sent the notice of termination letter. As we plead in the third-party complaint, the relationship between Midwest Mailing and Neopost remained unchanged after that point in time, and it remained unchanged until at least April 2016, and perhaps even beyond that. But in that interim, between September 2015 and April 2016, the parties continued to deal with each other as though the dealer agreement was in full force and effect, as though the exclusivity provision was in full force and effect. So there was no injury at that time. The injury did not occur until April of 2016. Well, when you use the phrase, you know, could have been fixed, I think the correct phrase was, you know, was it fixed? I mean, I think your claim is that, you know, when you put everything back into place, it was fixed at that time. Isn't that what you're claiming? Well, our contention in the third-party complaint is that it was not fixed, that, in fact, the act of redomiciliation was not a violation of the dealer agreement, given the nature or given the manner in which it occurred, and that fact was not recognized and fully explored by the third-party defendants in representing Midwest in the Neopost case in New York. They made the arguments in an initial motion to dismiss most of the arguments in any event, and then they fled those arguments again in their counterclaim in the New York litigation. Neopost moved to dismiss them. The judge in the Southern District of New York denied that motion. A couple weeks later, Neopost answers the counterclaims, and three weeks after that, the case settled, and it settled by means of Midwest Mailing giving up its exclusivity right. It was a right that was intact at that moment in time, and the point of the third-party complaint, the allegations of the third-party complaint, is that those defendants, the third-party defendants, advised Midwest Mailing to relinquish that right when that should not have been done, that advice should not have been given, because the position that Midwest Mailing occupied in the New York case was a very strong one, and they let it go. That's the point of the litigation, of the third-party complaint. So, would you like us to write something that would say that when somebody settles a case after there is a breach, that there could be the same injury by somebody else later on? Yes, because I think that's what the state of the law in Illinois is. What case says that? People v. Brockman. It's a case, actually, that Midwest Mailing, or pardon me, that the third-party defendants raised in their briefs. In People v. Brockman, the state alleged that Brockman had polluted the property at one point in time, and the state, for environmental remediation purposes, brought in an engineer to clean up that pollution, and what Brockman alleged in the third-party complaint is, years after it had polluted the land, this remediation engineer comes in, doesn't do the cleanup properly, they also pollute the land, and what the Supreme Court ultimately said about that topic was, the injury was the same, it's the pollution to the land, and the state pleads it against Brockman, Brockman pleads it against Mathis, and the argument that you just posed was made before the Supreme Court, that these events occurred years apart in time, and that they therefore could not have caused the same injury. The Supreme Court said, no, that's not accurate. The Supreme Court dispelled the notion that you're focusing on the timing of the injury, or pardon me, the timing of the act, or even the fact that they were separate acts. So that's not the proper focus. The proper focus is on the injury. So, two actors acting at different moments in time can cause the same injury. Factually, and under Brockman and other precedent in Illinois, not least of which is the Board of Trustees Supreme Court decision in, I believe, 2002, that authority says that that can happen, and it's legally sufficient, or conversely, it's not legally deficient if the two acts occur at different moments in time. You want to save some time for your rebuttal, or is there another issue that you want to go into? I do want to save a couple of minutes, Your Honor. I don't know if the court wants me to address at all the personal jurisdiction issue. I think they're fairly straightforward, and we've said most of what I think we need to say in the briefs, so I'll just comment very briefly on the jurisdictional issue. The question of whether the trial court, the circuit court, had jurisdiction over Mr. Rapp, it turns necessarily on the allegations that are set forth in the complaint, and Mr. Rapp's contacts through email communications with the state of Illinois, with Midwest Mailing, who's situated in the state of Illinois, go directly to the heart of the allegations made against him. Those communications related to the litigation that was pending in the Southern District of New York, and that's the focus of the third-party complaint. I think the circuit court had ample grounds for exercising personal jurisdiction over Mr. Rapp. Okay. Is there any questions by any of the panel members? No, thank you. No. Okay, let's hear from the affiliate. Good morning, Your Honor. May it please the court, my name is Eric Kaplan. Your Honor, there's two separate reasons why the court could affirm the lower court's decision. The first is that they adequately, that they failed to adequately plead sufficient facts to support a claim for contribution, and the second is that they failed to allege that the third-party defendants contributed to the same injury. The questions that you asked focused on the same injury requirement, but separately from that, the third-party complaint doesn't allege proper facts. The same injury requirement is essential. It defines whether or not there's a potential third-party defendant can be available as a joint tortfeasor, and in this case is a legal malpractice case where the examination of the same injury requirement is even more critical, because in that case, you've got a situation where successor counsel is coming in to try to fix or to clean up a prior counsel's malpractice. Now, Illinois does allow claims against successor counsel for contribution, but that requirement of same injury is all-important. This is because of success. It's not that they can always bring in claims against successor counsel, and that's because successor counsel brought in to clean up the mess of prior counsel could fear for his own liability and could have divided loyalties and be more concerned about prioritizing his concerns versus the clients, and also dragging in successor counsel into malpractice cases could jeopardize the attorney-client privilege. So with these policy concerns in mind, it's important to really analyze the same injury requirement. In every legal malpractice case, the claimant must allege the case within a case, and they must allege facts that support it, how the result in the underlying action would have been different, but for the alleged negligence of successor counsel. Although Schoenberg claims that the circuit court applied a heightened pleading standard, it didn't. In fact, all that it required was that it provide factual support and not just conclusions and speculation for the third-party complaint. Now, here the third-party complaint fails for its conclusory statements that Massey and Gale is liable to Midwest by advising it to settle rather than take the case forward to trial. Missing in this third-party complaint are any factual allegations as to how Midwest settlement was, in fact, a bad deal. There's also no allegations as to how Midwest would have been in a better position to simply proceed to trial or how the settlement would have been better if Midwest engaged in further discovery or what the downside is of proceeding with a trial rather than settling. These proximate cause allegations are necessary where the party claims a negligent entry into a settlement. Merely alleging that participating in discovery would have resulted in a better deal or that Midwest claims and defenses were viable or meritorious and should have been pursued is not enough. And a third-party complaint can always plead those sort of speculative and conclusory allegations. And I think you touched on this, Your Honor, that taken to its logical conclusion, allowing a predecessor counsel to maintain this type of a claim would force successor counsel in all cases to have to try the case. Opposing counsel acknowledged during oral argument below that this would lead to an absurd result, and it would. So a malpractice defendant cannot satisfy the Contribution Act's same injury requirement simply by parroting the damages allegations in the plaintiff's malpractice complaint and then claim that the injuries alleged against the defendant and third-party defendant are the same. That's what's been done here. The third-party complaint simply points to a damage, that damage being the loss of exclusivity right, and says that since they're pleading that against me, I'm going to plead it against them, and therefore we're pleading the same injury. But there's a distinction between the injury and the damages, and that's where this third-party complaint fails.  Schoenberg did not sufficiently allege facts to satisfy the same injury requirement. Schoenberg asserts that the injury sustained by Midwest did not take place until Midwest settled its dispute with Neopost and bargained away its exclusivity right. Schoenberg is wrong. Midwest alleges that it had to give up an exclusivity right due to Schoenberg's malpractice as that is one category of damages stemming from the injury caused by Schoenberg, but that does not mean that Massey and Gale caused the same injury. Schoenberg cites to the Northern Illinois Physicians case, as they did this morning, where the court stated that an injury in a legal malpractice case is not an injury, is not the attorney's negligent act itself, but rather the injuries of cunary injury to an intangible property interest caused by the attorney's negligence. Generally, a legal client's loss for which he may seek damages will not occur until he has suffered an adverse judgment, settlement, or dismissal of an underlying action caused by the attorney's negligence, but a malpractice claim may accrue before any of these things happen if it's plainly obvious that a client has been injured as a result of professional negligence, and that's what happened here long before Massey and Gale was retained. Midwest suffered an injury upon the completion of the redomicilliation work and Neil Post's reaction to that. Schoenberg's argument that everything was business as usual for Midwest ignores the reality of the situation. In the real world, before Massey and Gale's involvement, Midwest received a letter terminating the dealer agreement and was forced to fight for his life in the federal district court case in New York. Midwest was also forced to engage, and importantly here, to start paying new counsel to fix Schoenberg's redomicilliation malpractice. At that point, Midwest's injury was plainly obvious, and it was forced to incur legal expense to defend itself as a result of Schoenberg's malpractice. Schoenberg claims that the common injury was the loss of exclusivity. That demonstrates their confusion between a common injury and overlapping damages caused by two separate injuries. Now, I would ask the court to consider Roberts versus Heilkast, where the predecessor counsel blew the statute of limitations against the defendant in auto accident case, and in his client's legal malpractice case, he sued successor counsel for contribution due to the failure to collect on a judgment against a co-defendant. The lawyer claimed that the common injury in that case was the failure to obtain any recovery at all from the auto accident. The court disagreed and held that the injury caused by predecessor counsel was his failure to bring suit within the limitations period, and the injury caused by successor counsel related to the inability to collect on a judgment on a different cause of action against a separate defendant. The injuries were separate but related injuries that arose out of the same background facts, which is what we have in this case. Like Roberts, Schoenberg's negligent redomicilliation, which gave Neopost the basis to terminate the dealer agreement and to sue Midwest and New York, was separate and independent from Massey and Gayle's settlement advice. The actions of the two firms could not have brought about the same injury. Another instructive case for the court to consider is the Board of Trustees versus Coopers and Librant, which is the Coopers and Librant 1 case. In that case, the crux of the board's claims against the accountant was a failure to detect that the treasurer was engaging in illegal trading practices, and that his actions violated Illinois law and the board's investment policies. The accounting firm's third-party complaint, like the third-party complaint here, repeated allegations from the plaintiff's complaint alleging that the board and its individual members failed to detect whether the college's investment portfolio complied with applicable law and negligently supervised the treasurer. The appellate court correctly noted that the third-party complaint ignored the question of injury and instead focused on the question of damages, the damages in that case being the losses caused by the treasurer's investment versus focusing on whether the injury caused by the third-party plaintiff and the third-party defendant were the same. Likewise, in this case, Schoenberg mistakenly focuses on the damages, here the loss of the exclusivity right, rather than focusing on the sameness of the injuries caused by Schoenberg and Massey and Gale. Like the two alleged injuries in Coopers 1, the redomicilliation malpractice is entirely separate and independent from the allegedly bad settlement claim against Massey and Gale, even if the damages flow, arguably flow, from each. Now, Schoenberg, in their brief, they point to the second board of trustees case with the Coopers 2 case, and in that case, two accounting firms provided audits in successive years and both failed to detect the same violations of law by the treasurer. Both firms' errors occurred well before the treasurer's investment that ultimately caused plaintiff to sustain a loss. In Coopers 2, the accounting firms provided the exact same services and both failed to detect the strategy and practice that years after the fact caused this loss. Court properly held that the injury caused by both firms there was the same. Here, unlike Coopers 2, Schoenberg's malpractice immediately caused Midwest to breach its contract with Neopost. Massey and Gale subsequently defended Midwest and settled the lawsuit resulting from Schoenberg's malpractice. Recognizing the mistake in their logic, although Schoenberg made no such distinction or attempt to split injuries in the third party complaint, it now says for the first time that it's not seeking contribution for the litigation expense injury and that it's only seeking contribution for the loss of exclusivity, or what they call their relinquishment injury, which it admits is a separate injury from the litigation expense injury. Schoenberg's attempt to dissect and split the injury that it admittedly caused to Midwest is an admission that they're dealing with two separate injuries. This prevents contribution. If Massey and Gale had contributed to the same injury as defendants, contribution would be available for all damages stemming therefrom. Lastly, it bears noting that the goals of the Contribution Act will still be satisfied if this court affirms. The Contribution Act ensures that no defendant pay more than its fair share. Schoenberg has asserted affirmative defenses that will ensure that Schoenberg pays only the portion of damages for which it is liable. It cannot be that successor counsel can always be dragged in as a third party defendant in contribution. The Act's same injury requirement ensures that this only happens when the two parties contribute to the same injury. Because the injury caused by Schoenberg and Massey and Gale are not the same. Notwithstanding the fact that their damages can be overlapping, there can be no contribution. It's our position, and we ask that the court affirm the circuit court's dismissal of the third party complaint. Any questions by any members of the panel? No. No, thank you. Okay, let's hear from the other appellee. May it please the court. Eli K. Oliphant from Sparacino PLLC for third party defendant and appellee Ryan Rappa. The allegations of the third party complaint as against Ryan Rappa are virtually the same as those against Massey and Gale. So this court should affirm for all the same reasons that Mr. Kaplan just argued. Specifically, Schoenberg has not alleged professional negligence by Ryan Rappa with sufficient particularity. And Schoenberg, as a matter of law, did not allege that Ryan contributed to the same injury as is required under the Illinois Contribution Act. Turning to specific personal jurisdiction, the key for this case are jurisdictionally relevant links to the alleged cause of action. The only contacts between Ryan Rappa and Illinois that could be relevant would be his contacts that led to the claim for contribution. That is, the contacts that caused the same injury as that caused by Schoenberg. Schoenberg does not allege Ryan Rappa worked on redomiciliation, the transaction that's underlying Midwest Mailing's claim of malpractice against Schoenberg. In fact, if you compare the record on appeal, C-1151, 1152, and 1157, with the secure record on appeal, C-28 through 30, you will see that Schoenberg in the first amended first third party complaint alleged that Ryan worked on redomiciliation. But in the second amended third party complaint, an issue for this interlocutory appeal, Schoenberg no longer makes that allegation. That is because after extensive jurisdictional discovery, the circuit court made a finding that there were no facts supporting the allegation that Ryan Rappa worked on redomiciliation. That's record on appeal C-726 and C-1748. So, as a matter of law, Schoenberg no longer alleges the requisite contact with Illinois that would form the basis for specific personal jurisdiction. There are no contacts relevant for their claim of contribution. And regardless, Ryan Rappa did not purposefully direct his activities into Illinois and did not avail himself of the benefits and protections of Illinois law. He did not profit through his review of his parents' legal issues, and it would therefore be improper and contrary to due process to drag Midwest's owner's son to Illinois to defend this lawsuit. Any questions by any members of the panel? No. Okay, thank you very much. Let's hear the rebuttal. Your Honor, I'm going to touch very briefly on the personal jurisdiction issue. Mr. Rappa does not have to profit from his activities and his contact with Illinois to be subject to jurisdiction in Illinois. I would also suggest to you that Mr. Rappa did benefit, or at least stood to benefit, from the advice that he gave to Midwest Mailing. It matters not at all that he is the son of the owners. There's no separate jurisdictional analysis in our jurisprudence that provides for that. He stands to benefit, though. Anything that benefits Midwest Mailing benefits his parents. Anything that benefits his parents will eventually benefit him. And he reached into the state of Illinois. He gave advice, and in giving that advice, he breached the standard of care. Who did he give the advice to? Let me ask you this. Who did he give the advice to, his parents or to Midwest? To Midwest Mailing through his agent, his father, who was, I believe, the vice president or maybe the secretary of the company. I don't recall. And he was acting on behalf of Midwest when this advice occurred? I mean, none of that's in your complaint. But we also don't allege that it was given to his father. We allege that he gave advice to Midwest Mailing. But the facts of the case show that he gave it to his father. So how do you get Midwest in here? Because the third-party complaint alleges that Mr. Rappa, the elder, is one of the shareholders of Midwest Mailing and an officer of Midwest Mailing. So he's giving the advice to an officer of the company. And as the court well knows, corporations under Illinois law don't act unto themselves. They act through their agents. So the advice was given to Midwest Mailing, the legal entity. Mr. Rappa, the senior, as an individual, had no particular rights as it related to the dispute between Midwest Mailing and Neopost. That was a right that belonged only to Neopost. The shareholders don't have that right, nor do the officers. Only the entity does. But how about the father? Whose advice did he rely on, his son or the law firm that he retained? I mean, where's the reliance? In terms of settling the case? In the terms of bringing him in to the case. I mean, you know, if my son's a lawyer and I'm not and I give him something to look at, that's one thing. But if I hire a lawyer, you know, I'm going to take the lawyer's advice, not my son, who may have just got out of law school. How does that work? Maybe, but you might take the advice of both lawyers. And if both lawyers give the same advice, you might be relying on both lawyers. If I might address the contribution issues in Mr. Kaplan's argument. The third party defendants continue to insist that the loss of exclusivity is a damage. It's not. Mr. Kaplan, during argument before the circuit court in December of 2019, stated it correctly. The damages is the quantification of an injury. When we say loss of exclusivity, that's not a quantification of anything. That is the concept. That's the injury. The injury then needs to be quantified, which has been done in this litigation outside the record. But the injury is the loss of exclusivity. And that remained an intact right that Midwest Mailing had until it was dealt away by Midwest on the advice of his lawyers at the time in the middle of 2016. If you accept the argument that because the acts occurred at different times, at times, pardon me, there can be no same injury, then you have gutted contribution law. Lawyers may not sue another lawyer for contribution. Because lawyers in these contribution cases don't act at the same time. They might act a day apart, a month apart, or a week apart. But they're very rarely are they acting as co-counsel. It doesn't usually come up that way. All these cases that are contribution come up in the context of successor counsel or predecessor counsel. So the separation in time in the different acts that the lawyers do is irrelevant to the discussion of whether this is the same injury. Mr. Kaplan raised Board of Trustees. The problem with Board of Trustees, one, is that at no time does that opinion address what the actual injury is. It focuses on the acts. And the appellate court and Board of Trustees, two, did the same thing. And Board of Trustees, two, it said the auditors for 1992 and three conducted their audits during those times. The auditor for 1991 conducted its audit at that time. Therefore, they couldn't have led to the same injury. And the Supreme Court came back and said, no, you're focusing on the wrong thing. You're focusing on the act. We needed to be focusing on the injury. And the injury in those cases was the investment loss that occurred later. You know, you're past your time, so try to sum up. Okay. If I could make one more statement, if not. Go ahead. Go ahead. Make your statement. They raised this question of, and I think you might have alluded to it as well, Your Honor, that the logical outgrowth of allowing a contribution claim in this setting is to put all successor counsel in a position where they have to try the case. That's not true. What we do as lawyers is tough. It's not easy. We have to make judgments. The preamble to the Illinois Rules of Professional Conduct say it. There's even a Seventh Circuit case that says being a lawyer ain't easy. We have to make hard calls sometimes. And the successor counsel who comes into the case has to recognize that. That lawyer has to look backwards and say, what was done before me? Are there any mistakes? Do I need to fix them? And if there are mistakes, they have to make the assessment of whether they can be fixed. It's not an easy job. And it's not so simple as to say, well, there was a mistake, therefore we have to try the case. No. You have to make the judgment as successor counsel about what was done, what can be fixed, and what is best for the client. And the thrust of this third-party complaint is that while they may have been put in a position where, based on what my client did, they did not make the right decision. They did not give the right advice, and they proceeded forth with a settlement that gave up a right that up until that time was intact and could have been properly defended, but it wasn't. Thank you. Any further questions by any members of the panel? No, thank you. All right. Well, we want to thank you guys for a very interesting case. You gave us some good briefs and some good arguments, and you'll have an opinion or an order shortly. And the court will be adjourned, but I'm asking the panel members to...